# NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

RALPH CRUZ,                          )
        Plaintiff,                )
                     )
      v.                               )        CAUSE NO.: 2:09-CV-262-PRC
                     )
MICHAEL J. ASTRUE,                   )
Commissioner of the Social Security  )
Administration,                      )
        Defendant.                )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Ralph Cruz on August 27, 2009, and Plaintiff's Memorandum in Support of His Motion for Summary Judgment [DE 19], filed by Plaintiff on April 2, 2010. Plaintiff requests that the January 16, 2009, decision of the Administrative Law Judge to deny him disability insurance benefits be reversed or, alternatively, remanded for further proceedings. For the following reasons, the Court grants the request and remands for further proceedings.

## PROCEDURAL BACKGROUND

On March 8, 2007, Plaintiff filed an application for Supplemental Security Income, and filed an application for Disability Insurance Benefits on August 7, 2007, alleging a disability onset date of January 18, 2006. Plaintiff's applications were denied initially and upon reconsideration.

A hearing was held on October 6, 2008, before Administrative Law Judge ("ALJ") John E. Meyer, at which Plaintiff, his attorney Thomas Scully, Medical Expert James McKenna, and Vocational Expert ("VE") Grace Gianforte appeared. On January 16, 2009, the ALJ issued a decision denying Plaintiff's applications. Plaintiff filed a Request for Review and the Appeals Council denied this request on July 20, 2009, leaving the ALJ's decision the final decision of the

1

Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff, born in 1962, was 43 years old on the date of his alleged onset of disability, and 46 years old on the date of the ALJ's decision. He had a ninth grade education, past work experience as an order puller at K-Mart from October 2005 through January 2006, and prior work as an assembler, a janitor, and in a hybrid position as a grinder, crane operator and spray painter.

### B. Medical Evidence

In February 2002, Plaintiff was seen in the emergency room at St. Catherine Hospital for complaints of low back pain after he fell shoveling snow. He was assessed with acute back strain and discharged with prescriptions for Motrin, Skelaxin (a muscle relaxer), and Vicodin. In March 2003, an MRI of Plaintiff's lumbar spine showed degenerative disc disease from L1-2 through L5-S1, diffuse disc bulges at L2-3 through L5-S1, and a herniation at L3-4 with possible compression of the left L4 nerve root and mild to moderate spinal stenosis.

In June 2005, Plaintiff was seen in St. Catherine's emergency room for complaints of worsening back pain over the prior two to three weeks, with some numbness and tingling in his legs. He was discharged with prescriptions for Vicodin and Flexeril, and instructed not to engage in heavy lifting.

On January 10, 2006, Plaintiff returned to the emergency room at St. Catherine's with complaints of low back pain that began the day before. Plaintiff reported his pain as moderate to severe, but, on examination, it was noted that he was only in mild distress. Straight leg raising was positive on the right, and Plaintiff exhibited muscle spasm and range of motion limitations in his lumbar region. He was discharged with prescriptions for Motrin, Flexeril, and Vicodin, and instructions not to work for four days or engage in lifting. On January 13, 2006, Plaintiff returned to St. Catherine's. It was noted that he was ambulating, but required a cane. X-rays of his lumbar spine showed no obvious fractures.

On January 18, 2006, Plaintiff saw Dr. Joseph Spott. Plaintiff told Dr. Spott that he injured his back while pulling patio furniture out of a box at his job at K-Mart. Dr. Spott noted that despite Plaintiff's prescriptions for pain medications and a muscle relaxer, he still complained of tenderness in his lower back. On examination, Plaintiff exhibited some muscle spasm in his lumbar spine, range of motion limitations secondary as a result of the spasm, neurological testing was normal, and his legs were stable with range of motion. He also had paresthesias from his buttocks to his bilateral knees. Dr. Spott assessed Plaintiff with lumbar sprain, recommended physical therapy, and indicated that Plaintiff could return to work if he lifted no more than five pounds.

Plaintiff started physical therapy on January 19, 2006. He described his pain as "hot-burning" and rated it as an eight on a scale of zero to ten. After one session, Plaintiff stated that he felt much better and rated his pain as a four on a scale of zero to ten. Despite missing his January 26, 2006, appointment, on January 30, 2006, Plaintiff stated that he felt better and had been performing his exercises. Plaintiff reported continued improvement at his next two appointments in early February 2006, but missed his appointment on February 6, 2006. Plaintiff again reported

progress on February 8, 2006, but missed his final three appointments.

On October 13, 2006, Plaintiff was seen in the emergency room at St. Margaret Mercy hospital for an abscess on his left thigh. On examination, it was noted that he was in no acute distress.

On October 26, 2006, Plaintiff underwent a consultative physical examination with Dr. Kanayo Odeluga. Plaintiff complained of lower back pain, joint pains, and blood in his stool. He stated that his back pain had been present for over a year and described it as unbearable on the day of the examination and severe the day before. He also claimed that he experienced tingling, burning, and numbness in his arms, legs, face, and hands. Plaintiff told Dr. Odeluga that he was in a car accident over three weeks prior. He also reported an unspecified work injury and a serious head injury. He claimed that he formerly used alcohol, but no more than one to two drinks per day, and he reported formerly using illegal drugs. On examination, Dr. Odeluga observed that Plaintiff was cooperative and in no painful distress, his lumbar range of motion was slightly limited; straight leg raise testing was negative; his strength was normal; his gait was slow and short, but without an assistive device; neurological testing was normal; he exhibited mild difficulty squatting and walking on toes, but had no difficulty tandem walking or getting on and off the examination table.

On December 3, 2006, Plaintiff returned to St. Margaret's emergency room and saw Dr. Chittaranjan Patel for treatment of an abscess on his right thigh. On examination, Plaintiff was in mild distress secondary to pain. Dr. Patel diagnosed Plaintiff with cellulitis. Plaintiff was able to walk with a cane. Dr. Patel instructed him to stop smoking.

In February 2007 Plaintiff returned to the emergency room at St. Margaret's with complaints of rectal pain and bleeding which was attributed to a ruptured hemorrhoid. Plaintiff's physical

examination was otherwise normal.

On April 18, 2007, state agency reviewing physician Dr. J.V. Corcoran considered the results of Dr. Odeluga's examination and Plaintiff's February 2007 emergency room visit. Dr. Corcoran concluded that the evidence was insufficient to show a severe impairment. On June 28, 2007, Dr. F. Lavallo, also a state agency reviewing physician, affirmed Dr. Corcoran's assessment as written.

On April 22, 2007, Plaintiff submitted a drug and alcohol report in which he claimed that he did not use drugs or alcohol.

On May 16, 2007, Plaintiff underwent a consultative psychological evaluation with V. Rini, Psy.D. Plaintiff reported he was homeless and staying with friends. He claimed that he was unable to work due to medical problems, and that he had difficulty maintaining employment prior to his medical problems. Although Plaintiff denied problems with alcohol and drugs, he stated that he was on probation for intoxication. He denied any other legal problems but subsequently admitted that he was imprisoned for one year in 2003 for auto theft. He indicated that he had a driver's license, but that it was suspended for driving without insurance. Plaintiff claimed problems with short and long term memory, difficulties dressing and bathing due to back problems, and trouble with range of motion and standing for long periods. He stated that he prepared simple meals such as a sandwich or an egg. He reported that he occasionally used other's laundry facilities to wash clothes, sometimes wore the same clothes too long, and did not shop for groceries because he did not have his own place.

On mental status examination, Dr. Rini observed that Plaintiff's affect was frustrated, angry, and depressed, his speech was normal, and he was cooperative during the evaluation. Dr. Rini administered the Wechsler Adult Intelligence Scale - Third Edition ("WAIS-III"), on which Plaintiff

obtained a Full Scale IQ score of 62, placing him in the extremely low range of intellectual ability. Dr. Rini concluded that Plaintiff had adaptive deficits in functional academic skills, social and interpersonal skills, and work. He diagnosed Plaintiff with dysthymic disorder and concluded that he met the criteria for mild mental retardation.

On May 18, 2007, state agency reviewing psychologist F. Kladder, Ph.D., completed a psychiatric review technique form and a mental residual functional capacity assessment. Dr. Kladder considered Dr. Rini's evaluation, including Plaintiff's WAIS-III test results, records from St. Margaret, and the function reports of Plaintiff and Ms. Solis. Dr. Kladder noted Plaintiff's contradictory statements to Dr. Rini regarding his substance use and legal problems as well as the conflict between his report that he did not perform activities of daily living and his statements to Dr. Rini that he sometimes used laundry facilities and made simple meals. Dr. Kladder noted that there was no evidence documenting Plaintiff's IQ in the mental retardation range prior to age 22, and assessed Plaintiff with borderline intellectual functioning instead of mental retardation. He assessed Plaintiff with moderate limitations in activities of daily living, no limitations in social functioning, mild limitations in concentration, persistence, or pace, and opined that Plaintiff was capable of performing simple, repetitive tasks.

On June 27, 2007, state agency reviewing psychologist Joelle Larsen, Ph.D., noted that the disability function reports indicated that Plaintiff's activities of daily living appeared to be primarily impacted by physical issues. Dr. Larsen affirmed Dr. Kladder's assessment as written.

On August 2, 2007, Plaintiff submitted a disability function report in which he claimed that his personal needs took two to three times longer than previously. He also reported homelessness.

On August 16, 2007, Plaintiff was seen in the emergency room at St. Margaret Mercy for

6

complaints of lower back pain. He had decreased range of motion in his back and muscle spasms. He was given prescriptions for pain and spasms.

On September 20, 2007, Plaintiff was admitted to Saint Margaret Mercy for cellulitis. He was in pain and had difficulty walking.

On April 21, 2008, Plaintiff was seen at Northwest Family Health for complaints of pain in his back and ribs. Plaintiff claimed that it was difficult to do any activity as a result of his pain. On examination, Plaintiff exhibited mild tenderness and straight leg raise testing was negative. An MRI showed degenerative disc disease at all lumbar levels with protrusions causing mild spinal stenosis at L3-4, L4-5, and L5-S1.

On April 28, 2008, Plaintiff was admitted to St. Catherine's and saw Dr. Mohamed Turkmani after complaining of abdominal pain lasting for two days. On examination, neurological testing was normal. A CT scan of his abdomen showed diffuse enlargement of the pancreas, and Dr. Turkmani diagnosed Plaintiff with acute pancreatitis. Dr. Turkmani suspected that the pancreatitis was related to alcohol use. On May 5, 2008, a CT scan of Plaintiff's abdomen showed that his pancreas was normal. Plaintiff was discharged in good condition on May 12, 2008, with instructions to stop drinking.

Plaintiff was seen for complaints of low back pain on May 30, 2008. He reported difficulties walking, sitting, and standing. In July 2008, Plaintiff received epidural steroid injections at L4-5 and L5-S1. In August 2008, Plaintiff was treated for an abscess on his right thigh and left armpit swelling. Through September 2008, Plaintiff continued to complain of lower back pain.


**C. Other Evidence**

On March 8, 2007, Plaintiff had a face-to-face interview with an agency interviewer. The interviewer noted that Plaintiff walked with a cane and had difficulty sitting, standing, and walking.

On March 30, 2007, Leticia Solis submitted a third-party function report in support of Plaintiff's applications indicating that Plaintiff was significantly limited due to his pain.

On June 21, 2007, Ms. Solis submitted a second third-party function report. Ms. Solis reported that, when she saw him, Plaintiff appeared unshaven, ungroomed, and with wrinkled clothes and sometimes body odor. She stated that he needed to be reminded to brush his teeth and change his clothes. Ms. Solis indicated that Plaintiff was unable to bend down, needed help with everything, and was in pain. She wrote that she needed to repeat herself when talking to him.

The following day, Plaintiff submitted a disability function report in which he indicated that he was unable to perform typical daily activities.

### D. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he had pain in his lower back that went down to his knees, and pain in his chest and stomach that included nausea. He also had cellulitis causing his chest and leg to hurt and go numb at times. He claimed that he had difficulty getting out of his seat, walking, and twisting. He stated that he had used a cane for two years because he was afraid he would fall down, but that it was not prescribed by a doctor. Plaintiff testified that he quit going to school in ninth grade because the area was dangerous, but that he is able to read. He was unable to recall if he was in special education classes. When asked about his alcohol use, Plaintiff acknowledged that he had consumed alcohol in the past. He claimed, however, that he stopped drinking three months prior to the hearing.

### E. Medical Expert's Testimony

Dr. James McKenna testified as a neutral medical expert with respect to Plaintiff's physical impairments. Dr. McKenna reviewed the medical record and testified that Plaintiff's most severe physical impairment was radicular compression, and that he would not be surprised if Plaintiff reported that he was in pain all of the time. Dr. McKenna had not, however, reviewed evidence sufficient to testify about the severity of Plaintiff's pain. He opined that Plaintiff was capable of sedentary work, with the following additional limitations: a sit/stand option, no work at arm's length, occasional bending, stooping, and twisting, and no use of the left foot for foot controls. Dr. McKenna considered Plaintiff's need for a cane, and opined that Plaintiff was using it due to emotional dependence rather than practical dependence. Dr. McKenna could not comment on Plaintiff's intellectual functioning other than to say that his presentation was compatible with borderline functioning.

## F. Vocational Expert's Testimony

Grace Gianforte testified as a neutral vocational expert. The ALJ asked her to consider a hypothetical individual with Plaintiff's age, education, and past work experience, who could do sedentary work with the following additional limitations: only simple repetitive tasks; a sit/stand option at will; no work at arm's length; only occasional bending, stooping, or twisting; and no use of the left foot for foot controls. In response, the vocational expert testified that the individual would be unable to perform Plaintiff's past work, but identified sedentary jobs in the regional area that the individual could perform including sorter, assembler, and polisher.

## G. The ALJ's Decision

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. He found that the Plaintiff suffered from three severe impairments: disk disease, pancreatitis

and borderline intellectual functioning, but that these impairments did not meet or medically equal a Listed impairment in the social security regulations.  The ALJ found that Plaintiff retained the functional capacity to perform sedentary work except that he could not work with objects at arms length, he can only occasionally bend, stoop, or twist at the waist, he cannot use the left foot for operation of foot controls, and he must be allowed to sit or stand at will.  Plaintiff's cognitive limitations also limit him to the performance of simple, repetitive and routine tasks.  The ALJ concluded that Plaintiff could not perform his past relevant work but could perform a significant number of jobs in the national economy.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) ; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the

claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

The Plaintiff argues that the ALJ committed reversible error by (1) engaging in an incomplete mental impairment analysis, specifically: failing to mention the appropriate mental impairment listing, failing to give appropriate weight to the evidence, and failing to adequately discuss his reasons for rejecting evidence; (2) making an improper credibility finding that ignores SSR 96-7p; (3) reaching an erroneous residual functional capacity finding by failing to follow SSR 96-8p and incorporate all of Plaintiff's limitations; and (4) failing to identify and resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles as required by SSR 00-4p. The Commissioner argues that the ALJ's findings are supported by substantial evidence and that the ALJ complied with the relevant legal requirements.

### A. Mental Impairment

The determination of whether a claimant suffers from a listed impairment comes at steps two and three of the ALJ's analysis. Step two of the ALJ's analysis requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). The determination of whether a claimant suffers from a severe condition

13

that meets a listed impairment comes at step three of the sequential analysis. At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id*.

> Listing 12.05 describes mental retardation and provides, in part:
>
> Mental retardation refers to significantly subaverage general intellectual functions with deficits in adaptive functions initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

Here, the ALJ did not mention Listing 12.05(C) in his analysis of Plaintiff's claimed mental impairment. The ALJ did acknowledge that Plaintiff received a full scale I.Q. score of 62 and diagnosis of Mild Mental Retardation by an examining physician, a test result which puts Plaintiff within the realm of Listing 12.05. However, the ALJ refused to accept the score and diagnosis, and relied on the assessment of non-examining State agency mental health professionals to conclude that the test results are invalid. The Code directs ALJs to "give more weight to the opinion of a source

who has e xamined [claim ant] than to the opinion of a source who has not." 20 C.F.R. § 404.1527(d)(1).; *see also Burton v. Apfel*, 1999 WL 46902, at *8 (N.D. Ill. 1999) (finding error in failure to afford "great deference" to the opinion of the only examining psychologist). In this case, the non-examining agency professional opined that the I.Q. results lacked credibility because of contradictory statements Plaintiff made during the mental health examination. The ALJ gave more weight to this non-examining professional than to an examining physician, without explaining the reasons behind this determination.

In addition to his failure to give deference to the examining physician, Plaintiff argues that the ALJ's failure to analyze or even mention Listing 12.05(C) for mental retardation was an error requiring rem and. The listings describe im pairments that are consi dered to be presum ptively disabling when specific criteria are met. *See* 20 C.F.R. § 404.1525(a). In order "[t]o meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment" and he "bears the burden of proving his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (*citing Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993); *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991); *Steward v. Bowen*, 858 F.2d 1295, 1297 n.2 (7th Cir. 1988)). Even though the burden of proof rests with the claimant, the Seventh Circuit "has also held that an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006), *citing Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott*, 297 F.3d at 595.

The Commissioner argues that Plaintiff has not met the requirem ent of proving onset of mental disability before age 22, as required by th e Listing, a nd t hat i s what the state agency

professional relied upon in finding that the Plaintiff was not disabled within the meaning of the Listing. This was not, however, the reason given by the ALJ in denying the existence of what the ALJ termed Plaintiff's "alleged learning disability." The ALJ's failure to mention the listing or adequately discuss his reasons for rejecting the report of the examining physician leave an insufficient record for judicial review.

Given the ALJ's failure to mention the specific listing for mental retardation, classification of the Plaintiff's claimed retardation as a "learning disability," and failure to explain his reasoning in denying the existence of any mental disability, this Court concludes that the ALJ's analysis on this question was impermissibly perfunctory and remands for a more thorough analysis of the Plaintiff's alleged mental disability, including further psychological assessments and development of the record regarding Plaintiff's mental ability before age 22, as necessary.

### B. Credibility Finding

Plaintiff also argues that the ALJ failed to make a proper determination of Plaintiff's credibility and impermissibly disregarded Plaintiff's testimony regarding his pain and other symptoms. The Commissioner counters that the ALJ properly considered the objective medical evidence and adequately articulated the reasons behind his determination.

The Social Security Regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id.* The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a

medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;
(7)     Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d

731, 738 (7th Cir. 2006).

In his decision, the ALJ explained that he found the Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms to be not credible to the extent that they are inconsistent with the residual functional capacity assessment. Plaintiff argues that this determination is conclusory, without sufficient analysis or reasoning for this Court to review it. This Court agrees: a short credibility evaluation such as that offered by the ALJ

> is precisely the kind of conclusory determination SSR 96-7 prohibits. Indeed, the apparently post-hoc statement turns the credibility determination process on its head. .... In short, the determination is lacking any explication that would allow this court to understand the weight given to the [Plaintiff's] statements or the reasons for that consideration as required by SSR 96-7p.

*Brindisi*, 315 F.3d at 787-88. Finding that the ALJ's credibility determination is conclusory and insufficiently explained, the Court remands this matter for thorough analysis of Plaintiff's credibility.

### C. Residual Functional Capacity Assessment

Plaintiff argues that the ALJ's RFC assessment is insufficient as a matter of law. The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870.

Plaintiff argues that the ALJ erred by not including Plaintiff's cane use in his RFC

assessment nor discussing his reasons for excluding it. The ALJ did note that Plaintiff claimed to need a cane, but did not include any specific analyzation of his reasons for excluding cane use from the RFC. R. at 17. The ALJ merely adopted the assessment of the non-examining state medical expert. R. at 18. However, the Social Security Administration requires that "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. The Commissioner argues that because the cane was not obtained as a result of a prescription and the state medical expert opined that the Plaintiff's reliance on it was emotional, not physical, the ALJ was justified in not finding that Plaintiff needs to use a cane. However, the ALJ did not undertake that analysis in his decision, failing to "build an accurate and logical bridge from the evidence to his conclusion." *Young*, 362 F.3d at 1002 (quoting *Scott*, 297 F.3d at 595). On remand, the ALJ must analyze whether Mr. Cruz requires a cane to ambulate and, if so, must include that requirement in his residual functional capacity and hypothetical question to the VE.

### D. Conflict Between Vocational Expert Testimony and DOT

Plaintiff argues that the ALJ erred in failing to identify and resolve conflicts between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT").

"Under SSR 00-4p, ... the ALJ has an affirmative responsibility to ask if the VE's testimony conflicts with the DOT, and if there is an apparent conflict, the ALJ must obtain a reasonable explanation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)(citations and quotation marks omitted). Specifically, SSR 00-4p requires:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator

will:

> Ask the VE or VS i f the evidence he or she has provided conflicts
> with inform ation provided in the DOT; a nd if the VE's or VS's
> evidence appears to conf lict with the DOT, the adjudicator wi ll
> obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000). It is the responsibility of the ALJ to resolve

inconsistencies between the VE's testimony and the DOT. *Prochaska*, 454 F.3d at 736.

Plaintiff argues that the ALJ failed to ask the VE whether her testimony was consistent with

the DOT and that her testimony did, indeed, conflict with the DOT. The job codes identified by the

VE do not correspond to work that could be performed by someone with the Plaintiff's residual

functional capacity. The Commissioner attempts to explain away the discrepancy by alleging that

the VE merely incorrectly cited the codes, but that her "minor errors in identifying specific DOT

codes" do not m ake her testimony unreliable or inconsistent with the DOT. Mem . in Supp. of

Comm'r at 22. This Court is not so sanguine about the ALJ's and the VE's errors. Because of the

errors, it is not apparent from the record whether there are any jobs in the econom y that could be

performed by someone with Plaintiff's limitations.

### E. Remedy

Finally, Plaintiff requests that the Court reverse the Commissioner's decision and remand

for an award of benefits. An award of benefits is appropriate "only if all factual issues have been

resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor*, 425 F.3d at 356.

This is not such a case. Here, the ALJ's opinion was not supported by substantial evidence because

he failed to develop the record, leaving severa l issues unresolved. Fur ther, although Plaintiff

requests an award of benefits, he fails to present a developed argument in favor of doing so.

Unresolved issues exist regarding Plainti ff's m edical capacity, Plaintif f's credibility,

conflicts between the VE's testimony and the DOT, and the ALJ's RFC finding: all are issues that can only be resolved through further proceedings on remand. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

The Court finds that the ALJ failed to sufficiently articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning. *See, e.g., Scott*, 297 F.3d at 595. An ALJ must give enough information for the reviewing court to consider his reasoning and be assured that all of the important evidence was properly considered. In this case, the ALJ failed to engage in a complete mental impairment analysis, made an improper conclusory credibility determination, failed to account for the Plaintiff's limitations in his RFC finding, and failed to properly examine the VE as to the consistency of her testimony with the DOT. Therefore, to this extent the Court **GRANTS** the Plaintiff's Memorandum in Support of Motion for Summary Judgment or Remand [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 27th day of September, 2010.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record